Good morning, Your Honors. I'm Martín Guajardo on behalf of Berlito Sulit and Estela Sulit. This case is not new to this court. It's been here before, and it's been before the District Court on at least two occasions. The question is for us, will this court allow us to put in line deportation orders that have been issued by the Board of Immigration Appeals with the decision that this circuit has reached in Noriega-López, notwithstanding that there is no statutory basis that specifically would hold that only the immigration judge is in a position to enter a final order of removal or deportation. The petitioners arrived in the United States nearly 14 years ago, and after having been placed before the immigration judge, the immigration judge granted political asylum to both petitioners, and that decision was appealed to the Board of Immigration Appeals. That occurred in 1994. By 1995, the Board of Immigration Appeals rendered its decision in connection with this case. As a result of that, there was a petition filed with this court, and after approximately 15 months, a decision was made, and the petition was dismissed. And during that time, as the court already knows the history of this case, the petitioners were in fact given permanent resident cards by the Immigration Service. Now, were they accused of making a false statement on their application for the green card? Not to my knowledge, Your Honor. That's actually an interesting part of the case. They didn't disclose that they were applying for the green card while their appeal was pending. That is correct, but it seems somewhat. The bureaucracy, one hand, didn't know what the other hand was doing. But they later, then the INS later revoked the green card, claiming it had been issued by mistake. It's difficult to imagine that if the agent that is reviewing the, this is, if I may, Your Honor, I'm holding up what would be a copy of the agency file that was released to our office through the Freedom of Information Act. But it's difficult to imagine that an officer who is conducting an interview for adjustment of status for someone who's been granted asylum, if in this packet of material they would find the appeal to the Board of Immigration Appeals, would find the transcript, if you will, of that case that's going forward, the notices filed by the attorney representing the individuals at the Board of Immigration Appeals, and then notations in the file that would have to lead that officer to the conclusion that there is no way that this case can be granted. But in any event, the case is granted. That one page on the, there's an application, I-485, which is an application for adjustment of status. We know it has one line straight through it. There's at least a dozen or more questions. There's no indication that that application was, if you will, adjudicated so that each question would have been checked off with the agency typically would. Did these people have the same lawyer all the way through? My understanding is that the attorney that, the short answer to that question is no, they did not. The attorney that they did have in the proceedings before the immigration judge was the same attorney who represented them, it appears, before the board and on their initial petition for review. They're making some claims that the lawyer let them down and didn't notify them and didn't follow through. But that's the, that was at the stage of the- That was at the second petition for review. I think that if we look at this, at the, if you will, the quagmire of issues here that we have in this particular type of case, any case going before the, any case after April 1st, 1997, the effective date of IRA-IRA, any case that goes up to the Board of Immigration Appeals where the board disagrees with that decision of the immigration judge, that case will then have to be remanded to the immigration judge for a decision that will be in line with the findings of the Board of Immigration Appeals. In this case, that decision was made in 1996, was it? That is correct, Your Honor. And in this case, what we have is we don't have the immigration judge issuing the order of deportation or the order of voluntary departure. We have instead the Board of Immigration Appeals stripping, if you will, the grant of asylum and then on its own granting voluntary departure for the family to leave the United States. Even if we assume that's true as a legal proposition, where does it leave us? Because it just says, okay, BIA, you have to send it back to the immigration judge to sign the paper. So is that what we do? You want us to remand this, grant the petition or remand to the BIA so it can remand to the immigration judge so it can issue the same order that you're contesting? I don't know that he would, that the judge would issue the same order. Are you saying the immigration judge has the authority to override or disregard the instructions of the BIA? No. That can't be your position. No, Your Honor, but what the immigration judge's duty bound to do is to tell the alien applicant of any and all available relief that is there for him at the time that he or she appears in front of that immigration judge. So in the example that you've provided to me today, if an individual were in front of the immigration judge at one point and the judge grants an asylum application, if that individual at some later date became eligible for a secondary form of relief, and we know, those of us immersed in the immigration practice, that an individual may say he's granted asylum today. At some later date, he may marry a United States citizen. He may become eligible for an application for adjustment of status under Section 245. If the Board of Immigration Appeals were to find that they want to vacate the granting of that application for asylum and the case is then sent back to the immigration judge, the immigration judge is duty bound to tell. No, wait a minute, wait a minute, wait a minute. But they can send it back like we do to the district courts with a specific mandate, right? Remanded to the I.J. with instructions to issue an order denying asylum, period. Why can't the B.I.A. do that? They can. And if the B.I.A. does that, as Judge Clifton said, isn't the I.J. duty bound to accept that mandate of the B.I.A.? I believe then if we have that as a strict reading, then essentially what we've done is we've foreclosed the ailing of being able to make any applications for any and all forms of relief. Oh, no, all it does is get around, as Judge Clifton said, get around the technicality you're raising that the B.I.A. can't order deportation. If you're in front of an immigration judge today, for example, and the only application for relief… On a clean slate. What I'm saying is if you're there after an appeal to the B.I.A. and the B.I.A. says no, immigration is wrong, we remand this to the B.I.A. for an order, one, denying asylum, and two, ordering immediate deportation, period. Then the I.J. has to follow that, right? He's had his hearing before the I.J. He's had his appeal before the B.I.A., right? He's lost. And why can't the B.I.A. make such an order? And the B.I.A. does, in fact, in some instances, make that type of order. In other instances, it makes a different order. What I'm saying is why can't it make that kind of order in this case? And if it did, as Judge Clifton said, you're just pursuing the technicality. Let me take a step further, because I think I understand what you're getting at, but I'm not sure I understand how it fits in this case, which is you're saying that potentially the applicant has another basis. Maybe something's happened along the way, or there's just another basis that wasn't litigated before. And so you're saying that it goes back to the immigration judge, and the immigration judge is supposed to identify alternative means of relief. But is that anything more than theoretical in this case? I haven't seen anything that suggests that, in fact, there is some other avenue of relief for the applicants. Absolutely not. The reason we received a stay at the district court is because the decision of the stop time rule on Section 244A.1 had not been decided. This court has recognized. But it's been decided now. It has. And the question would be are there any factual circumstances that have changed that would allow, under this court's own precedent decision of BUI, B-U-I versus I-N-S, where we recognize that an immigration judge is duty bound to advise the individual before him of what potential relief he has. And in this case, I think that to the extent that an individual may have relief available to him in any form, that unless the immigration judge has the case back in front of him, and unless the Board of Immigration Appeals has specifically remanded the case only for an order, that the judge, that particular judge, would be the one to entertain a hearing and ask what, if any, other applications are going to be applied for. Thank you. All right. Your time is gone, Mr. Guhara, but we'll give you a minute for rebuttal, all right? Good morning. Jocelyn Burton for Respondent John Ashcroft. I'd like to raise two issues with you today. One, that the Court of Appeals should not consider the Seelitz petition for the first time on appeal. And secondly, that even if the Court does consider the Seelitz issue in this particular case, the BIA had authority to issue orders of deportation under the law as it existed pre-IRERA. First, the Ninth Circuit has ruled that habeas petitions are not ordinarily considered for the first time on appeal if they were not raised in the district court. However, you may consider issues not raised if it's purely one of law, does not rely on the factual record, or will not prejudice one of the parties. The Respondent contends that this issue is somewhat prejudicial to raise it here, because had, in this particular case, petitioners had several opportunities to raise this issue if they believed that there was a valid claim. I mean, the — Is this the torture, the Convention on Torture? No, not the Convention on Torture. This particular claim, they're not even raising the Convention on Torture claim in this appeal. It's been abandoned. They were claiming inadequate assistance of counsel for not raising it. Right. That's what they claimed in the district court, and they haven't raised that issue on appeal. This issue that they're raising now regarding the authority of the BIA to issue orders of deportation has been raised for the first time on appeal. This issue was not raised in the district court. And we contend it is prejudicial because the petitioners could have raised this issue as early as 1996. This is the third time that the petitioners have been before this court. They've been to the district court twice, and this has never been raised as an issue before now. And even if this court considers the issue, under IRERA, the BIA did have the authority to issue deportation. Under IRERA, there was a great deal of authority that was vested with the attorney general under immigration law. Former Section 8 U.S.C. 1252B provided that a special inquiry offer shall conduct proceedings to determine deportability of aliens and shall administer oaths, present and receive evidence, interrogate, examine and cross-examine alien witnesses, and as authorized by the attorney general, shall make determinations including orders of deportation. And this court has held in Cardozo v. Fonaseca 767 F. 2nd, 1448-1455, that the BIA had the power to review the records and make its own findings of fact. You've also held that there were not necessarily any procedures pre-IRERA. Well, Cardozo doesn't say that the BIA can issue the order, though. Well, not specifically, no. But I do think in your decision in Noriega v. Lopez, you clearly distinguished the laws that existed pre-IRERA v. post-IRERA. And when you said that here under IRERA, the statute specifically says that the immigration judge shall make orders of deportation. There was no such regulation or there was no such statute pre-IRERA saying that only an immigration judge can make orders of deportation. And indeed, the regulations, the immigration regulations implied that there was a great deal of authority vested with the BIA. Is there a case of construing that IRERA, that language, only the I.J. can issue the order? Is there a case that says that only an I.J. can issue an order pre-IRERA? No, after. Yeah, well, Noriega v. Lopez, where you specifically says that the statute is a change post-IRERA says that only the immigration judge can issue an order of deportation. But pre-IRERA, there was no statute that specifically said that only the immigration judge could issue an order of deportation. The regulations pre-IRERA said that the BIA was authorized to exercise such discretion and authority as conferred upon the attorney general by law and as appropriate and necessary for the disposition of the case, which meant that they could review the facts and issue their own order of deportation as appropriate. And that's what was done here. I don't want to charge you time on this, but should we change the caption of this case to show the new attorney general as the defendant? Yes, you should, Your Honor. The petitioners themselves admit that the BIA was authorized to make decisions as necessary for disposition on the case in page 10 of their brief. And I have no other comments to make. If the Court has any other questions for me, I'd be happy to answer them. Nope. Thank you. Thank you, Mr. Burton. Mr. Guajardo. I'd ask the Court to consider the following, and that is, Noriega-Lopez, we have our marching orders in this case. This is the case that this Court has given to us. And as immigration practitioners, we know now that if the Board of Immigration Appeals takes away a benefit from an alien who is before the immigration judge, that case is going to go back to that immigration judge. Does Noriega-Lopez only stand for the proposition that the only thing that immigration judge is going to do is issue an order of deportation? I don't think so. That would be an absurd conclusion for us to take from Noriega-Lopez. Noriega-Lopez tells us if that judge's decision has been vacated by the Board of Immigration Appeals, by them taking a look at the facts in that case, the transcript and so forth, it's going to go back to that immigration judge. And that immigration judge is going to look at this case to know. How did you handle this case before Judge White and the district court? We went to the district. We were on the case after 2000. After 2000. Yes, Your Honor. Why didn't you raise Noriega-Lopez's question then? This court decided Noriega-Lopez on July 9th, 2003. We filed in the year 2000. We didn't have the benefit of. When were you in the district court? Long before this decision, Your Honor. Before Noriega-Lopez. Yes, Your Honor. Many, many months before that. Our order from Judge White was in the year 2000. So you're asking us to apply that retroactively then to the case because it wasn't raised in the district court? No, Your Honor. That would be correct. And I wanted to respond to the question that was asked by the panel, and that is, is there anything to be gained by remanding this case? And I imagine that if we look at Noriega-Lopez and we take Noriega-Lopez to heart, what is gained is that an individual that's before the immigration judge makes an application, not just one application for relief, but may make multiple applications for relief. And the immigration judge in adjudicating the particular application, whether it's an adjustment of status, whether it's an application based on a marriage, application based on a labor certification, an application based on a political. Adjustment of status has already been through the meat grinder, hasn't it? It's been through the immigration system and was found to have been issued by mistake. Now, do they get a de novo hearing on that before an IJ if it goes back? They will not look at the 208, the asylum application. They may look at any other relief that may be available to them as they appear before the immigration judge. As this court already knows, the department has repapering provisions. Repapering provisions would be for someone who's been issued a charging document, as in this case, in order to show cause that may not be able to qualify based on the 10 years of physical presence in the United States, depending on whether they have a qualifying relative that would allow them to go back in front of the immigration judge. If, in fact, that were to be true in this case, the immigration judge would then, with the concurrence of the agency, allow this case to be taken off calendar and allow the agency at some point to re-paper these particular individuals. They may have another alternate form of relief. I would ask that this court to consider allowing those individuals that have been before the Immigration Service, before the Board of Immigration Appeals, with deportation cases, the same benefit that Noriega-Lopez extends to individuals after April 1, 1997. Okay. Thank you. Thank you, Your Honor. Thank both counsel. Case is submitted for decision.
judges: Goodwin, Tashima, Clifton